UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| vs. | : | CRIMINAL NO. 3:03CR274(CFD) |
| ANDUZE ALEXANDER | : | June 6, 2005 |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO TRANSFER**

The Defendant, Anduze Alexander, through counsel, respectfully submits this memorandum in support of his Motion to Transfer this matter to the Southern District of Texas.

**I. Background.**

Mr. Alexander is the sole defendant in a two count indictment alleging a conspiracy to commit access device fraud and access device fraud, in violation of 18 U.S.C. §§ 371 and 1029(a)(2). The essence of the government's claim is that Mr. Alexander, who lives in Houston, Texas, served as a recipient of items fraudulently purchased over the internet by unnamed co-conspirators. According to the government, the alleged co-conspirators, who reside outside the United States, made internet purchases using fraudulently obtained credit card numbers. Because most U.S. companies will not ship products purchased by credit card to foreign addresses, the purchasers allegedly arranged to have the items shipped to Mr. Alexander's address in Houston. The government claims that upon receiving the items, Mr. Alexander shipped the items to the actual purchasers. The only connection to Connecticut is the government's claim that some items were purchased from "Computers4sure.com," which has its headquarters in Trumbull, Connecticut.

**II. Discussion.**

Pursuant to Rule 21(b) of the Federal Rules of Criminal Procedure, a defendant may move to transfer a proceeding from one district to another "for the convenience of the parties and witnesses and in the interest of justice." Fed. R. Crim. P. 21(b) (2005). In determining whether to transfer a case, the Court should consider the following factors: (1) the location of the defendants; (2) the location of possible witnesses; (3) the location of events likely to be at issue; (4) the location of relevant

- 2 -

documents; (5) the potential for disruption of the defendant's business if transfer is denied; (6) expenses to be incurred by the parties if transfer is denied; (7) the location of counsel; (8) the relative accessibility of the place of trial; (9) docket conditions of each district; and (10) any other special circumstances that might bear on the desirability of transfer. United States v. Maldonado-Rivera, 922 F.2d 934, 966 (2d Cir. 1990). Although no one factor is dispositive, courts should try to "strike a balance and determine which factors are of greatest importance." United States v. Stephenson, 895 F.2d 867, 875 (2d Cir. 1990). Moreover, courts as a general policy "should, whenever possible, try defendants where they reside." United States v. Guastella, 90 F. Supp. 2d 335, 338 (S.D.N.Y. 2000); United States v. Russell, 582 F. Supp. 660, 662 (S.D.N.Y. 1984). This makes particular sense in cases involving the virtually boundless universe of the internet, where a defendant's actual conduct may occur thousands of miles away from the location of an alleged victim. See generally United States v. Templin, 251 F. Supp. 2d 1223 (S.D.N.Y. 2003).

In Templin, the defendant was charged with crimes in connection with his internet business.[1] Templin, 251 F. Supp. 2d at 1225. After reviewing the ten factors listed above, the court concluded that the Southern District of Indiana, rather than the Southern District of New York, was the appropriate jurisdiction for the case, given that the defendant lived in Indiana, his business was in Indiana, and "all of the illegal acts alleged took place in Indiana." Id. According to the court, "the center of gravity of the case is clearly in the State of Indiana." Id. The court also noted that since the "[d]efendant's internet business touched all 50 states . . . there [was] no particular reason why this case should be tried in the Southern District of New York, rather than Indiana." Id. Similar circumstances and considerations exist in Mr. Alexander's case, all of which warrant transferring the case to the Southern District of Texas.

Like the situation in Trimplin, the "center of gravity" of Mr. Alexander's case falls squarely in Houston, Texas. A review of the ten factors listed above supports this conclusion. Indeed, only one of the factors, number ten, is a neutral factor; all the rest favor Mr. Alexander's request to transfer the

---

[1] The scant background included in the court's opinion in this case did not disclose the nature or circumstances of the defendant's alleged activity.

- 3 -

case to Texas.

    Regarding factor one, Mr. Alexander lives in Houston. Moreover, he is a man of limited means who must support a wife and three children while attempting to defend himself against these charges. The expense of traveling back and forth to Connecticut will result in a tremendous financial hardship to the family. As to factor two, all of the potential defense witnesses, as well as a vast majority of the government's witnesses (delivery drivers, records custodians from various shipping companies, etc.) will either be from the Houston area or from a state other than Connecticut.[2] Looking at factor three, the events most likely to be at issue in this case -- Mr. Alexander's alleged receipt and transfer of the fraudulently obtained items -- all occurred in the Houston area. Mr. Alexander is not alleged to have committed any acts in Connecticut. Indeed, he has never set foot in the State of Connecticut except to be presented in court on these charges. As to factor four, most if not all, of the delivery and shipping documents regarding the events at issue are presumably located in Houston. As to the fifth factor, while Mr. Alexander does not own a business, he has recently been hired as a computer network administrator at Exxon-Mobil. He will likely loose this position if he is required to travel frequently to Connecticut for Court hearings and to prepare for trial. Regarding the sixth factor, Mr. Alexander has retained counsel from the Houston area to represent him in this matter. Requiring this attorney to travel to Connecticut will create a significant expense for Mr. Alexander, as will requiring Mr. Alexander and his witnesses to travel to Connecticut for court appearances and trial. Considering factor seven, Mr. Alexander, as mentioned, has retained counsel from the Houston area, thus leaving only the Assistant United States Attorney (AUSA) as being from Connecticut. Looking to factor eight, most if not all the witnesses for both the government as well as Mr. Alexander will come from the Houston area. Moving venue to the Southern District of Texas, then, will obviously make the location of trial much more accessible for witnesses for counsel and for the defendant and his family than the District of

---

[2] Mr. Alexander acknowledges that it is generally insufficient for a defendant to make a bald assertion that defense witnesses reside outside the jurisdiction in question. See Guastella, 90 F. Supp. 2d at 398-99. However, at this time Mr. Alexander prefers not to disclose to the government the names of the potential witnesses he may call at trial. However, he is prepared to submit to the Court for an *in camera* review an affidavit listing potential defense witnesses.

- 4 -

Connecticut. Finally, considering factor nine, while the current status of the docket in the Southern District of Texas is unknown, this Court's docket has historically been crowded.[3]

**III. Conclusion.**

In light of all the factors addressed above, transfer to the Southern District of Texas is both warranted and appropriate. Based on the government's claims, it is apparent that the focus of the evidence will center on deliveries supposedly made to Mr. Alexander in the Houston area, as well as his alleged shipment of packages to foreign addresses. While one of Mr. Alexander's alleged unnamed co-conspirators might have made one or more fraudulent internet purchases from a company based in Connecticut, this single, isolated, nexus to this District is far outweighed by the extensive connections of the parties, witnesses, documents, and transactions to the Southern District of Texas. Indeed, all of Mr. Alexander's alleged conduct occurred <u>exclusively</u> in the Houston area. In light of these circumstances, and after consideration of the factors listed above, it is apparent the "center of gravity" in this case resides in Houston. Any connection this case may have to Connecticut is simply too tenuous, and cannot outweigh the factors favoring transfer. Thus, it is appropriate for this Court to transfer jurisdiction to the Southern District of Texas.

WHEREFORE, for the reasons stated above, Mr. Alexander respectfully asserts that the interests of justice would be served if this Court were to transfer his case to the Southern District of Texas.

                                          Respectfully submitted,

                                          THE DEFENDANT,
                                          ANDUZE ALEXANDER

Dated: June 6, 2005                        /s/
                                          Thomas G. Dennis
                                          Federal Defender
                                          10 Columbus Blvd, FL 6
                                          Hartford, CT 06106-1976
                                          Bar No. ct05100
                                          (860) 493-6260

---

[3] For the fiscal year ending September 30, 2003, the last year for which figures are available, there were 446 cases pending per judgeship in Connecticut. <u>Second Circuit Annual Report</u>, 2003. The most recent report of the Southern District of Texas available on the internet (September 30, 2001), indicates a figure of 395 cases pending per judgeship.

- 5 -

CERTIFICATION

    I HEREBY CERTIFY that a copy of the foregoing Memorandum in Support of Defendant's Motion to Transfer has been mailed to David Ring, Assistant United States Attorney, P.O. Box 1824, New Haven, CT 06508, on this 6th day of June 2005.

/s/
Thomas G. Dennis