UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal No. 3:03CT274(CFD) |
| ANDUZE ALEXANDER | June 15, 2005 |

### UNITED STATES' REPLY TO DEFENDANT'S MOTION TO TRANSFER

### Introduction

Defendant Anduze Alexander presently moves the Court for a transfer of his case from Connecticut to Houston, Texas. This move, he claims, is necessitated because he and his lawyer are located in Houston.

While it is true that the defendant is located in Houston, any inconvenience caused by his distance from Connecticut is ameliorated by the fact that, to the extent he cannot afford to travel to Connecticut, such expenses will be paid for him. *See* 18 U.S.C. § 4285. Also, while he has sought to retain counsel in Houston, the only attorney who has filed an appearance for him is located in Connecticut; the Houston attorney whom the defendant has sought to retain has lacked the simple ability to file an appearance in this case or to attend telephonic conferences. And, it is by no means clear that the defendant will be able to retain Houston counsel even if this case were to be transferred there, particularly given that defense counsel may be wholly unaware of the complexity of the case.[1]

---

[1] Interestingly, the defendant seeks travel expenses from the Court because, he claims, he is indigent and cannot afford the cost of airline tickets. *See* Doc. No. 29. Yet, he claims the ability to retain his own counsel in Houston, and apparently expects that he will
(continued...)

Outweighing the defendant's interest in being prosecuted close to home is the government's interest in tracking down international, internet crime rings by following the crime-trail from the commercial victims to the criminal culprits. When a bank is robbed, local agents (hopefully) track down the perpetrators, no matter where they live, and the perpetrators are then prosecuted where the crime occurred. Likewise, when a business is defrauded (whether on the internet or otherwise), the same formula is applied. Here, the defendant has been charged with participating in an international fraud ring, which both posted stolen credit card information on the internet as well as used these cards to fraudulently purchase valuable items over the internet for international transshipment. One of the main fraud victims was located in Connecticut, and thus it was only natural that the investigation and subsequent prosecution would be located here.

To argue that the defendant must be prosecuted close to where he lives merely because he committed his crime on the internet while sitting in his home in Texas (rather than by physically traveling to Connecticut) would wreak havoc in computer crime cases: given that these cases must begin, and be pursued, where the crime occurs, it would be chaotic to then re-shuffle these cases all over the country, based on the happenstance of where the defendant is ultimately located. Surely the government is entitled to prosecute a crime where it occurs, and this interest cannot be outweighed merely by the defendant's desire not to travel in the physical world to that location where he and his cohorts traveled

---

[1](...continued)
be able to pay this attorney the cost of taking his case to trial.

in the virtual world for the purpose of harming others. Accordingly, the defendant's motion for a transfer should be denied.

## Background

The defendant stands accused of conspiring to commit access device fraud (in violation of 18 U.S.C. § 371) as well as a substantive count of access device fraud (in violation of 18 U.S.C. §§ 1029(a)(2) & 2). These charges stem from his involvement in an international ring that gained access to, and distributed, stolen credit cards, and used these cards to fraudulently obtain goods over the internet. One of the leaders of the ring was located in Kuwait. He would fraudulently use the stolen credit cards to order electronic goods for himself, and would have these goods delivered to the defendant. The defendant, in turn, would (among other things) ship the goods to his cohort in Kuwait. In return for his services, the defendant would demand that stolen credit cards be used to purchase electronic items for him, and this was done. The defendant used as drop sites for these deliveries his home address in Houston, his work address in Houston, and his brother's home in Maryland.

One of the main commercial victims was 4Sure.com, which was located in Connecticut. To date, the FBI has identified seventeen fraudulent transactions (or attempted transactions) involving both 4Sure.com and the defendant, totaling approximately $12,000.

Were this case to proceed to trial, the government would call the following sets of witnesses: (a) persons who could testify about the defendant's association with the

addresses in Houston as well as connecting him to references he made in his email conversations; (b) persons associated with the victim companies; (c) various credit card victims; (d) persons associated with the companies used to ship the fraudulently obtained goods; (e) persons associated with the internet service providers that produced voluminous electronic evidence, including (among other things) extensive electronic communications between the defendant and his coconspirators; (f) a law enforcement officer in Connecticut who received unsolicited correspondence from the defendant, and who took the defendant's lengthy confession; and (g) law enforcement officer(s) from Connecticut who would make sense out of the voluminous electronic evidence that was gathered during the multi-year investigation. With the exception of the witnesses falling within category (a), almost all of these witnesses will come from places other than Texas and Connecticut.[2] The defendant has failed to provide information about the identity of his potential witnesses (if any), including where they might reside.

## Legal Standard

Venue in criminal cases is considered proper in any district in which any part of the crime was committed. "[W]here the acts constituting the crime and the nature of the crime charged implicate more than one location, the Constitution does not command a single exclusive venue." *United States v. Reed,* 773 F.2d 477, 480 (2d Cir. 1985). Title 18, United States Code, Section 3237(a) provides:

---

[2] The defendant inexplicably claims that "most if not all the witnesses for both the government as well as Mr. Alexander will come from the Houston area." Def. Mem. at 3.

> Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district from, through, or into which such commerce, mail matter or imported object or person moves.
>
> Any offense involving the use of the mails, [or] transportation in interstate or foreign commerce . . . is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce, [or] mail matter . . . moves.

Federal Rule of Criminal Procedure 21(b) provides: "Upon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties and witnesses and in the interest of justice." Rule 21(d) indicates that a "motion to transfer may be made at or before arraignment or at such other time as the court or these rules may prescribe."[3]

In deciding on a motion to transfer, courts typically consider the following factors: (1) the location of the defendants, (2) the location of possible witnesses, (3) the location of events likely to be at issue, (4) the location of relevant documents and records, (5) the potential disruption of the defendant's business, (6) the expense to the parties, (7) the location of counsel, (8) the relative accessibility of the place of trial, (9) the docket condition of each district, and (10) any other special circumstances that might bear on the desirability

---

[3] The defendant's motion to transfer was not made prior to arraignment. It does not appear that any local rule or order allowed the filing of this motion at a later time. Accordingly, the defendant would need special leave of the Court to file the motion when he did, but he has not sought such leave.

of transfer.  *Platt v. Minnesota Mining & Mfg. Co.,* 376 U.S. 240, 243-44 (1964); *see United States v. Maldonado-Rivera,* 922 F.2d 934, 966 (2d Cir. 1990).

The decision whether to transfer a particular case to another district is left to the sound discretion of the trial court.  *Maldonado-Rivera,* 922 F.2d at 966; *United States v. Stephenson,* 895 F.2d 867, 875 (2d Cir. 1990).  In analyzing the *Platt* factors, a "court should not give any one factor preeminent weight nor should it assume that the quantity of factors favoring one party outweighs the quality of factors in opposition."  *United States v. Spy Factory,* 951 F. Supp. 450, 455 (S.D.N.Y. 1997).  "It remains for the court to try to strike a balance and determine which factors are of greatest importance."  *Stephenson,* 895 F.2d at 875.  No single consideration is dispositive.  *Maldonado-Rivera,* 922 F.2d at 966.  "A Court should look to all of the factors and determine whether the interests of justice would be better served by changing the trial venue."  *Spy Factory,* 951 F. Supp. at 456.  In sum, "[t]he determination of whether a particular case calls for transfer depends upon the peculiar facts and circumstances of that case."  *United States v. Posner,* 549 F. Supp. 475, 477 (S.D.N.Y. 1982).

"As a general rule . . . a criminal prosecution should be retained in the original district in which it was filed."  *United States v. Guastella,* 90 F. Supp. 2d 335, 338 (S.D.N.Y 2000) (internal citations and marks omitted).  "To warrant a transfer from the district where an indictment was properly returned it should appear that a trial there would be so unduly burdensome that fairness requires the transfer to another district of proper venue where a trial would be less burdensome."  *United States v. United States Steel Corp.,* 233 F. Supp.

154, 157 (S.D.N.Y. 1964).  The moving defendant bears of the burden of justifying the transfer of venue under Rule 21(b).  *Guastella,* 90 F. Supp. 2d at 338.

### **Argument**

The Court has discretion to keep this case in Connecticut or to transfer it to Texas; no one result is mandated by the facts of this case.  Nonetheless, it is in the interests of justice for the case to remain in Connecticut.  This can be seen from an analysis of the ten factors set forth in *Platt*.

*1) Location of the defendant.* While this factor weighs in the defendant's favor, it does not weigh very heavily.  Because the defendant has been determined to be indigent and eligible for court-appointed counsel, the costs associated with his defense (including the transportation of defense witnesses) will be covered by the Criminal Justice Act. 18 U.S.C. § 3006A. Moreover, the defendant's own transportation and subsistence expenses will be provided by the government, if necessary.  18 U.S.C. § 4285.  Thus, as a result of the defendant's claimed indigence, he will bear little costs as a result of the prosecution being located in Connecticut.  *See Maldonado-Rivera*, 922 F.2d at 965 (affirming district court's refusal to transfer the case from Connecticut to Puerto Rico, where the defendant lived, in part because defendant would bear little extra expense given his *forma pauperis* status).

Even though the defendant's residence is an important factor to consider in determining whether the venue should be changed, "inconvenience to the defendant or his business is not, by itself, a sufficient basis for transfer."  *United States v. Culoso,* 461 F. Supp. 128, 136 (S.D.N.Y. 1978).  "Every litigation, particularly a criminal prosecution, imposes

burdens upon a defendant and brings in its wake dislocation from normal occupational and personal activities." *United States Steel Corporation,* 233 F. Supp. at 156. Therefore, "mere inconvenience, interference with one's routine occupational and personal activities, and other incidental burdens which normally follow when one is called upon to resist a serious charge do not *ipso facto* make the necessary showing that a transfer is required in the interest of justice." *Id.* at 156-57. Here, the defendant has not shown sufficient hardship to warrant a transfer from the place of his prosecution to the place where he lives.

    *2) Location of Possible Witnesses.* The defendant claims that "most" of the witnesses will come from the Houston area. Def. Mem. at 3. Yet, as discussed above, few government witnesses will come from there. And, the defendant has utterly failed to allege sufficient facts to conclude that any of his witnesses will come from there. *See Spy Factory,* 951 F. Supp. at 458 ("Generally, a naked allegation that witnesses will be inconvenienced by a trial in a distant forum will not suffice for transfer . . . . Defendants must offer specific examples of witnesses' testimony and their inability to testify because of the location of the trial."); *see also United States v. Hamilton,* 1999 WL 349697, at *1 (S.D.N.Y. May 27, 1999) (Courts must be cautious of the parties deliberately inflating their witness lists since "experience has taught that on a motion for transfer, the parties often come forward with an extensive list of witnesses that favor their desired venues.").

    *3) Location of Events at Issue.* Cases may be transferred if the center of the criminal activity was located in a different district. For example, the court in *United States v. Atler* granted a transfer of venue to the district that "was the 'nerve center' of the alleged illicit

operations in carrying out the scheme." 81 F.R.D. 524, 526 (S.D.N.Y. 1979). But, where the alleged criminal activity was national or international in scope, and had ties to both districts, "the location of the events at issue favors neither side." *Guastella,* 90 F. Supp. 2d at 339. The fact that there are victims in the trial venue can be a countervailing consideration against transfer. *United States v. Bein,* 539 F. Supp. 72, 74 (N.D. Ill.1982).

Here, as noted above, the defendant was located in Texas while he and his far flung accomplices committed crimes in various locations, to include Connecticut. While the defendant was in Texas, it was by no means the case that Texas was the epicenter of the criminal activity; indeed, far from it. *See United States v. Templin*, 251 F. Supp. 2d 1223 (S.D.N.Y. 2003) (transfer justified where "all of the illegal activities took place" in Indiana).

*4) Location of Relevant Documents and Records.* This factor clearly weighs in favor of the government. All of the information seized pursuant to warrants and court orders is located in Connecticut. *But see Spy Factory,* 951 F. Supp. at 458 (overriding weight should not be given to this factor because of modern ease of transportation).

*5) Disruption of Defendant's Business.* This factor should add little to the Court's analysis. The defendant does not claim to have a business, and thus there is no business to be disrupted. Moreover, it may be expected that the defendant's own work schedule would be disrupted whether his trial is in Connecticut or in Texas. In short, given the present record, there is no reason to conclude that this factor weighs in favor of transfer, or that it distinguishes this case from any other.

*6) Expense to the Parties.* As already discussed, the government stands to bear the full expense of the prosecution being conducted in Connecticut. As a result, this factor is a neutral one. *See Maldonado-Rivera*, 922 F.2d at 965; *Guastella,* 90 F. Supp. 2d at 340-41; *Spy Factory,* 951 F. Supp. at 459.

*7) Location of Counsel.* The defendant presently has competent counsel in Connecticut, who has been preparing this case for trial over the past several months. Likewise, government counsel is located in Connecticut and has a deep familiarity with the facts and law surrounding the case. A transfer of this case to Texas would prevent all present counsel from participating in it. This, in turn, would create a severe hardship for the government, and might result in the defendant obtaining new counsel in Texas of limited experience and qualification.

It is important to point out that the defendant does not presently have counsel in Texas who is actually participating in this case. While the defendant apparently has sought to retain such counsel, it is unclear whether such counsel would, in fact, enter an appearance even if it is transferred. Indeed, the attorney in Texas has been unable to perform the simple task of filing an appearance in Connecticut or of participating in a telephone conference, and there is no indication of whether he is aware of the factual or legal complexity of this case. It is not even known whether the Texas attorney knows that the defendant provided repeated and extensive confessions in this case, or if he has conducted any sort of analysis of whether the defendant would be better off being prosecuted in one venue versus another. In short, the existence of an attorney in Texas

whom the defendant wants to hire in this case, but who has not even made an appearance, is too ephemeral of a factor to be considered in the Court's calculations. This point is driven home by the defendant's recent motion for travel expenses. If the defendant cannot afford to travel to Connecticut, how can he possibly pay for counsel of his choice in Texas?

*8) Relative Accessibility of Place of Trial.* The accessibility of the forums is generally a factor given little weight by courts. As noted by the judge in *United States Steel Corp.,* "The efficiency of modern air transportation renders rather sterile any argument based upon differences in distances from the respective courthouses." 233 F. Supp. 154, 158. Due to modern conveniences, consideration of "the relative accessibility of the courthouses does not tip the balance in favor of either party." *Martino,* 2000 WL 1843233, at * 5.

*9) The Docket Conditions of Each District.* Examining the judicial caseload profiles of the district courts in Connecticut and the Southern District of Texas ("SDTX"), it would appear that the Connecticut courts are better equipped to handle this case. In 2004, there were 340 total filings per judgeship in Connecticut, as opposed to 794 in SDTX. More significantly, there were 35 criminal filings per judgeship in Connecticut, as opposed to 295 in SDTX. And, there were 426 pending cases per judgeship in Connecticut as opposed to 507 in SDTX.[4] To the extent that this factor deserves any weight at all, it clearly tips in favor of venue in Connecticut.

---

[4] This information was gathered from the Judicial Caseload Profiles of district courts in    Connecticut    and    the    Southern    District    of    Texas    at www.uscourts.gov/cgi-bin/cmsd2004.pl.

*10) Special Circumstances.* The special circumstances of this case relate to the peculiar nature of internet crime. If the defendant had traveled to Connecticut and robbed 4Sure.com, there would be little serious debate over whether the case should be transferred to Texas. *See Maldonado-Rivera,* 922 F.2d at 965 (affirming district court's decision that the trial should proceed where the "primary evil occurred"). But, because the defendant and his criminal associates reached into this State by electronic means, he makes the claim that he is entitled to be prosecuted in a place more convenient to him, that is, his home State. This argument is flawed for two reasons.

First, the defendant's argument ignores the significance of the fact that the defendant, as alleged, committed a serious crime in Connecticut and one of the major commercial victims resides here. The fact that he committed the crime in a manner more convenient to him does not compel that the prosecution should be more convenient to him as well. Just as in the case of an armed robbery, the crime was committed in Connecticut and should be prosecuted here.

Second, the Court must give weight to the government's interest in pursuing a criminal prosecution in an orderly and efficient manner. When an internet fraud occurs, the government (here the FBI) must start where the crime began, and then follow the trail of evidence. The only thing that is fixed in such a case is the crime victims' locations. As a result, all investigative efforts must flow from the situs of the victims, and the location of the perpetrators must be determined (if ever) some time down the road. It would wreak havoc in the system if the government were to expend great resources and efforts to track

internet crime from its roots to a certain perpetrator, and then the perpetrator were able to move the case to him, for his simple convenience. In a case such as this one, it would not matter where the defendant committed his specific acts, because the thrust of his crime was committed on the internet and, thus, was committed in no physical location. As a result, the defendant could move to any location of his liking, and then demand that the prosecution be moved to him, because, he could claim, he never physically entered the State where the victim lay and, therefore, factors relating to his personal convenience should outweigh all others.

In short, in a case such as this one, there is no central locale where the core criminal acts were performed. Therefore, it makes perfect sense for the crime to be prosecuted where the victim resided, and where (consequently) the investigation was focused and the indictment was brought. To hold otherwise would be to set precedent that, in an internet case, a prosecution must be brought to the defendant, because, in essence, the crime was committed in no physical space and, accordingly, the only factors that matter are the ones that favor the defendant and his convenience. Surely such transfers are not in the interest of justice.

## Conclusion

Wherefore, the Court should deny the defendant's motion for transfer.

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY


          /s/
DAVID A. RING
ASSISTANT U. S. ATTORNEY
157 Church Street
P.O. Box 1824
New Haven, Connecticut  06510
(203) 821-3700
Federal Bar No. CT14362


## CERTIFICATION OF SERVICE

This is to certify that the within and foregoing has been sent via facsimile and first-class mail this 15th day of June 2005, to:

Thomas Dennis, Esq.
Federal Public Defender
District of Connecticut
10 Columbus Blvd., 6th Floor
Hartford, Connecticut 06106


_____/s/_____
DAVID A. RING
ASSISTANT UNITED STATES ATTORNEY


cc:    Chukwu Oko, Esq., via 713-271-0725 (fax)