UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | 3:03 CR 274 (CFD) |
| | : | |
| ANDUZE ALEXANDER | : | |

**RULING ON DEFENDANT'S MOTION TO TRANSFER**

Defendant Anduze Alexander is charged in a two-count indictment alleging conspiracy to commit access device fraud and access device fraud, in violation of 18 U.S.C. §§ 371 and 1029(a)(2). He has moved to transfer his case from the District of Connecticut to the Southern District of Texas, pursuant to Fed. R. Crim. P. 21(b). See Doc. # 26. The Court held a hearing on the motion on June 24, 2005, in which Mr. Alexander, his appointed counsel, and the Government participated.

**I.   Legal Standard**

Federal Rule of Criminal Procedure 21(b) provides that, upon motion of the defendant, a district court may transfer a criminal proceeding to another district when so doing would be "for the convenience of parties and witnesses, and in the interest of justice."[1] The disposition of a

---

[1] Federal Rule of Criminal Procedure 21(d) dictates that a motion to transfer "may be made at or before arraignment or at any other time the court or these rules prescribe." The Government has objected to Mr. Alexander's motion in part because it allegedly is untimely, having been filed approximately six months after Mr. Alexander's arraignment on January 7, 2005. At the June 24, 2005 hearing, Mr. Alexander's attorney orally moved for permission to file the motion out of time. The Court now grants that motion, finding that the motion to transfer does not implicate the Court's jurisdiction, and that Mr. Alexander's difficulties in consulting with counsel (as discussed more fully infra) warranted an extension of time for filing. Therefore, Mr. Alexander's motion is not time-barred under Fed. R. Crim. P. 21 and will be evaluated on its merits.

Case 3:03-cr-00274-CFD    Document 38    Filed 07/01/2005    Page 2 of 7

Rule 21(b) motion "is vested in the sound discretion of the district court." United States v. Maldonado-Rivera, 922 F.2d 934, 966 (2d Cir. 1990). In evaluating the merits of transfer, however, district courts are directed to consider the factors laid out in Platt v. Minnesota Mining & Mfg. Co., 376 U.S. 240, 243-244 (1964). The Platt factors include: (1) the location of the defendant; (2) the location of possible witnesses; (3) the location of events likely to be at issue; (4) the location of relevant documents; (5) the potential for disruption of the defendant's business if transfer is denied; (6) expenses to be incurred by the parties if transfer is denied; (7) the location of counsel; (8) the relative accessibility of the place of trial; (9) docket conditions in both districts; and (10) any other special circumstances that might bear on the desirability of transfer. Id. No single factor is dispositive, and the district court should strike a balance among them in deciding the merits of an individual case. See Maldonado-Rivera, 922 F.2d at 966. Nonetheless, it remains the defendant's burden to show that a transfer of his case is in the interest of justice. See United States v. Spy Factory, Inc., 951 F. Supp. 450, 464 (S.D.N.Y. 1997).

## II.     Discussion

Each Platt factor is applied to the facts of this case in turn.

### A.     Location of the Defendant

Mr. Alexander resides in Houston, Texas along with his wife and family. He has never resided in Connecticut, and has no contacts with Connecticut outside of the current criminal prosecution. He also is a diabetic, and was hospitalized during his trip to Connecticut to participate in the hearing on this motion.

### B.     Location of Possible Witnesses

At the hearing, Mr. Alexander submitted a list of potential defense witnesses for the

2

Court's in camera review. All were outside Connecticut and most were in the Houston, Texas area. For its part, the Government informed the Court that if this matter were to go to trial, very few fact witnesses would be called. The bulk of the Government's witnesses would consist of records custodians from national delivery services such as UPS and FedEx and from the online retail vendors affected by the access device fraud. Only one of those vendors is located in Connecticut; the others are in California, Maryland, and Minnesota. The government also expects to call former co-employees of Mr. Alexander; those employees are located in Texas. The law enforcement agents expected to testify would be from Connecticut and from Houston, Texas.

**C.     The Location of Events Likely At Issue**

The indictment charges that Mr. Alexander, along with several unindicted conspirators, participated in a scheme to unlawfully obtain the credit card information of innocent account holders, use that credit card information to fraudulently purchase goods from online retail vendors, and ship the fraudulently purchased goods to Mr. Alexander's business and residential addresses in Houston, Texas. Mr. Alexander then allegedly reshipped some of the items to a conspirator in Kuwait, and kept some of the goods for himself.

This was an international Internet fraud scheme, only partly touching the District of Connecticut. The victims of credit card theft live all over the United States. As mentioned before, one of the four defrauded vendors was a Connecticut company called Computers4sure.com. It is not alleged that Mr. Alexander placed any orders with Computers4sure.com or other vendors, only that he subsequently communicated with other conspirators and received delivery of orders placed by them.

### D. The Location of Relevant Documents

Due to the easy transportation and transferability of documents in modern society, this factor is now considered to be "of little consequence one way or another." United States v. Coriaty, 2000 U.S. Dist. LEXIS 11040, *3 (S.D.N.Y. Aug. 7, 2000); see also United States v. Layne, 2005 U.S. Dist. LEXIS 7567, *12 (S.D.N.Y. May 2, 2005). The Government has indicated that much of its evidence in this case consists of electronic instant messages and emails, which easily can be sent from one location to another; the physical location of such documents has little bearing on the most convenient site of prosecution.

### E. Potential For Disruption of the Defendant's Business

The defendant currently is employed with ExxonMobil in Houston, where he earns approximately $10 per hour. He cannot continue to hold his job if he is required to take repeated leave in order to travel to Connecticut. Because Mr. Alexander supports a wife and three children on his salary, extended time off would work a financial hardship on him and his family.[2]

### F. Expenses to be Incurred by the Parties if Transfer is Denied

If transfer is denied and this case remains in the District of Connecticut, Mr. Alexander will be required to travel to Connecticut to consult with his court-appointed attorney and prepare his case. Despite his indigence, he will be forced to bear these costs himself.[3] This is a

---

[2] Mr. Alexander has been determined indigent, and a federal defender was appointed to represent him at his initial appearance in this matter. He has indicated that if the case were transferred to Texas, he would retain private counsel through funds provided by a relative.

[3] The Government argues that the defendant will be furnished necessary transportation and subsistence expenses, pursuant to 18 U.S.C. § 4285. That statute, however, allows a district or magistrate judge to order that an indigent defendant be provided noncustodial transportation and subsistence expenses necessary for a subsequent *court appearance*. The statute does not authorize funds for other trips Mr. Alexander undoubtedly would need to take to consult with counsel and prepare his defense.

substantial financial burden, given his limited means and the fact that such travel will negatively affect his continued employment. The Government's cost of prosecution would be the same in either judicial district, save the minimal expense of transporting one or two Connecticut law enforcement agents to Texas to testify at trial.

### G.   The Location of Counsel

Currently, both Mr. Alexander's counsel and the Assistant United States Attorney in this matter are located in Connecticut. Given Mr. Alexander's difficulties in meeting with his counsel in Connecticut, he has attempted to retain private counsel in Houston, Texas. It would be easier for Mr. Alexander to consult his attorney and assist in preparing his defense if this case were transferred and he had the ability to retain an attorney in his community. Should the case be transferred, the United States Attorney's Office for the Southern District of Texas likely would assume responsibility for the prosecution.

### H.   Relative Accessibility of the Place of Trial

As with the location of documents, this factor typically is accorded little weight by courts. Due to "the efficiency of modern air transportation," neither the District of Connecticut nor the Southern District of Texas is truly inaccessible. See United States Steel Corp., 233 F. Supp. at 158. Relatively speaking, however, the District of Connecticut is inaccessible to Mr. Alexander due to its geographic distance from his home in Texas and the high costs of transportation between those two areas.

### I.   Docket Conditions in the Two Districts

Both the District of Connecticut and the Southern District of Texas are busy judicial districts, though Texas has a larger docket. The Government has submitted 2004 statistics

5

showing that there were 35 criminal filings per judgeship in Connecticut, as opposed to 295 in the Southern District of Texas. The overwhelming majority of the Texas criminal filings are immigration matters, however. In regard to other criminal filings, the dockets of the two districts are roughly equivalent.

### III.    Conclusion

The Court is mindful of the general rule that "a criminal prosecution should be retained in the original district" in which it was filed. United States v. Guastella, 90 F. Supp. 2d 335, 338 (S.D.N.Y. 2000). Nonetheless, the Court finds that Mr. Alexander has met his burden and demonstrated that a transfer of his case to the Southern District of Texas would be in the interest of justice.

Due to Mr. Alexander's indigence and his familial obligations, six of the Platt factors weigh in favor of transfer: the location of the defendant, the location of potential witnesses, the potential for disruption of the defendant's business, the expenses to be incurred by the defendant if the case is not transferred, the location of counsel, and the relative accessibility of the place of trial.[4] The Internet fraud scheme charged here touched many states other than Connecticut, and Mr. Alexander's allegedly illegal activities all took place in Houston, Texas. There appears to be no reason why this case need be tried in Connecticut rather than in the Southern District of

---

[4] Two other Platt factors—the location of relevant documents, accessibility of the place of trial, and docket conditions in either district— favor neither side, as previously discussed. The final Platt factor, the location of events at issue, is a closer question. Previous case law suggests that when the alleged criminal activity is national in scope, the location of events at issue favors neither side. See Guastella, 90 F. Supp. 2d at 339; Spy Factory, Inc., 951 F. Supp. at 457. Other cases, however, indicate that when a case should be tried in the district where its "center of gravity" lies. See, e.g., United States v. Templin, 251 F. Supp. 2d 1223, *3 (S.D.N.Y. 2003). This was a national and international access device fraud scheme, yet its center of gravity appears to have been in Texas. Since the other factors weigh so heavily in favor of transfer, however, the Court will decline to resolve this issue and treat this last Platt factor as neutral.

Texas, where Mr. Alexander also lives and works.

Therefore, the Defendant's Motion to Transfer [Doc. # 26] is GRANTED. The Clerk is directed to transfer this case to the Southern District of Texas for all further proceedings.

So ordered this ___1st___ day of July 2005, at Hartford, Connecticut.


\_\_\_\_/s/ CFD_____
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**